UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTY TONEY,

        Plaintiff,                                        Hon. Paul L. Maloney

v.                                                Case No. 1:18-cv-37

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence

supporting that decision.  *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted).  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight.  *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 34 years of age on her alleged disability onset date.  (PageID.212). She successfully completed high school and worked previously as a dispatcher.  (PageID.83-84).

Plaintiff applied for benefits on June 9, 2014, alleging that she had been disabled since December 12, 2013, due to a bulging disc injury, degenerative disc disease, severe back pain, cervical spine impairment, lumbar spine impairment, and anxiety. (PageID.212-13, 250).

Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (PageID.135-210). On October 21, 2016, Plaintiff appeared before ALJ Shane McGovern with testimony being offered by Plaintiff and a vocational expert. (PageID.91-133). In a written decision dated December 14, 2016, the ALJ determined that Plaintiff was not disabled. (PageID.74-85). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.33-37). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R.

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

§§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from degenerative disc disease with history of lumbar fusion and epicondylitis, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.76-77).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work subject to the following limitations: (1) she can lift/carry 10 pounds occasionally; (2) during an 8-hour workday, she can sit for 6 hours and stand/walk for 2 hours; (3) she needs to use a cane for assistance getting to and from the workstation; (4) she cannot climb ladders, ropes, or scaffolds; (5) she cannot crawl, kneel, crouch,

or operate foot controls; (6) she can occasionally balance, stoop, and climb ramps and stairs; and (7) she must avoid all exposure to hazards such as unprotected heights, dangerous machinery, and excessive vibration.   (PageID.77).

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding.  *See Richardson*, 735 F.2d at 964.  While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).  This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy.  *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding.   Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 300,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding.  (PageID.127-30).   This represents a significant number of jobs.  *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

    **I.**    **Medical Evidence**

In addition to Plaintiff's testimony at the administrative hearing, the administrative

record contained almost 300 pages of medical treatment records. The ALJ described this evidence as follows:

> In terms of the claimant's alleged "severe" impairments, the record indicates that before the alleged onset date, she presented to i-Spine Institute in November of 2011 due to back pain. The claimant alleged that she had worsening levels of pain in her back and lower extremities (Exhibit 17F/20). It was noted that she displayed facet tenderness at L3-L4, L4-L5, LS-S1 and the bilateral sciatic notches, that she had full strength and sensation of her lower extremities and that straight leg raise testing was negative (Exhibit 17F/20). The claimant was diagnosed with lumbar postlaminectomy syndrome and lumbar radiculopathy (Exhibit 17F/20). She was provided with prescriptions for Norco and Neurontin and was recommended to undergo an MRI of her lumbar spine.
>
> In December of 2011, the claimant underwent an MRI of her lumbar spine at Unity Medical and Surgical Hospital. The study revealed mild bulging at L3-L4 and stable postsurgical changes at L4-L5 and LS-S1 (Exhibit 16F/l). During a follow-up visit at the i-Spine Institute in December of 2011, the claimant reported that Norco was helping relieve her pain (Exhibit 17F/19). She was recommended to undergo medial branch blocks at L3-L4, as she was not likely a candidate for further surgery. In January of 2012, the claimant reported that medial branch blocks conducted in December of 2011 provided her with one week of relief.
>
> In December of 2012, the claimant underwent an MRI at Radiologic Associates of Northwest Indiana. The study revealed a stable protrusion at L3-L4 and stable fusion from L4 through S1 (Exhibit 12F).
>
> In June of 2013, the claimant established care at Physicians Healthcare. The claimant alleged that she was pain free for seven years after undergoing back surgery in 2005 and that she was currently experiencing lower back pain with numbness of her right lower extremity that improved while undergoing a series of steroid injections (Exhibit 2F/4). It was noted that her neck was supple and displayed good range of motion, that she had no sensation of the right lower extremity and mild sensation upon the use of a probe and that she had full strength of her upper extremities (Exhibit 2F/5). The claimant was diagnosed with chronic back pain (Exhibit 2F/5). She was provided with a prescription for ibuprofen.
>
> In July of 2013, the claimant underwent a nerve conduction study of her lower extremities at Michiana Neurologic Medicine, PC. The

study revealed chronic, significant right sided radiculopathy at L5 (Exhibit 1F/39). A nerve conduction of her upper extremities subsequently conducted in October of 2013 was noted to be unremarkable (Exhibit 1F/35).

In August of 2013, the claimant presented to Spine & Orthopedic Medicine, P.C. to follow-up for her degenerative disc disease. The claimant alleged that she continued to have persistent pain in her right lower extremity with weakness and occasional give-way of her right hip girdle (Exhibit 1F/12). She explained that her symptoms improved through the use of medication, a TENS unit and injection therapy. She was provided with a prescription for Gabapentin and was recommended to participate in a spinal cord stimulator trial. However, she returned to Spine & Orthopedic Clinic in October of 2013 in order to undergo a series of medial branch nerve blocks (Exhibit 1F).

In October of 2013, the claimant underwent an MRI of her cervical spine at Magnetic Resonance Imaging Center. The study revealed mild foraminal narrowing from C4/C5 through C6/C7 and a small protrusion at C7/Tl (Exhibit 1F/34).

In February of 2014, the claimant presented to Spine & Orthopedic Medicine for a medication recheck. The claimant alleged that her medication did not always control her pain, which caused her to lie down (Exhibit 4F/8). It was noted that she was neurologically intact yet antalgic for power in transition from sitting to standing and station (Exhibit 4F/8). She was diagnosed with sciatica and lumbago (Exhibit 4F/9). She was provided with prescriptions for methadone and Roxicodone. Brad Sandler, D.O. opined that the claimant is unable to perform even sedentary work for five days per week (Exhibit 4F/8). The undersigned gives this opinion little weight, as it is vague and does not contain any limitations that are meaningful to the disability process. In addition, they are inconsistent with the record, which indicates that the claimant has full strength of her upper extremities. Furthermore, opinions regarding disability are reserved to the Commissioner under SSR 96-Sp as well as 20 CFR 404.1527(e) and 416.927(e).

In June of 2014, the claimant returned to Spine & Orthopedic Medicine for a follow-up visit. The claimant alleged that she experienced constant pain and occasional give-way of her right lower extremity (Exhibit 1F/1). It was noted that she was neurologically intact for power in transition from sitting to standing, station and gait (Exhibit 1F/1). The claimant was diagnosed with sciatica, lumbago and postlaminectomy syndrome of the lumbar region (Exhibit 1F/1, 2). She was provided with prescriptions for

Roxicodone and methadone and was scheduled for a steroid injection. During a follow-up visit in October of 2014, the claimant reported that her back pain had been aggravated by a long car trip (Exhibit 4F/3). However, she also reported that she was able to physically do more during the day while on her medication. It was noted that she was neurologically intact for power in transition from sitting to standing, station and gait (Exhibit 4F/3). She was continued on her medication.

In February of 2015, the claimant presented to Physicians Healthcare due to pain in her right elbow. The claimant alleged that she had nagging pain in her right elbow that was accompanied by a lump and numbness of her right hand (Exhibit 6F/12). It was noted that the right elbow displayed severe pain upon palpation of the epicondyle as well with pronation and that there was inflammation of the right elbow (Exhibit 6F/12, 13). The claimant was diagnosed with epicondylitis of the right elbow (Exhibit 6F/13). She was recommended to use an elbow splint and to apply ice and heat to the area. During a return visit in March of 2015, the claimant reported that her elbow pain had not improved and that her back pain had been doing poorly except for experiencing good relief while on Klonopin (Exhibit 6F/10). It was noted that her right upper extremity displayed severe pain upon rotation and upon applying pressure upon the condyle with some numbness and that there was pain upon palpation of her neck and shoulders (Exhibit 6F/10, 11). The claimant was administered a steroid injection to the right elbow, was continued on Klonopin and was provided with a prescription for Flexeril.

In April of 2015, the claimant underwent an MRI of her lumbar spine at Unity Medical and Surgical Hospital. The study revealed a stable, tiny protrusion at L3-L4 with mild facet arthrosis and decompression of the central canal and foramina at L4-L5 and L5-Sl (Exhibit l0F/6). During a follow-up visit at the i-Spine Institute in April of 2015, the claimant was continued on her medications, as her symptoms were likely inflammatory in nature and because they were maintained on methadone and Roxicodone (Exhibit 11F/5).

In May of 2015, the claimant presented to The South Bend Clinic due to lower back pain. The claimant alleged that she had pain in her right lower back that radiated into her right lower extremity and was accompanied by some numbness and tingling (Exhibit 5F/4). She explained that her previous pain specialist had discharged her from his practice because she did not have methadone in her system and that she had Vicodin in her system instead (Exhibit 5F/4). It was noted that the claimant was tearful, that her right sacroiliac joint was painful, that she walked with an antalgic limp, that her lumbar spine

displayed painful range of motion and that she had full strength of her lower extremities (Exhibit 5F/6). Kathryn Park, M.D. informed the claimant that she did not feel comfortable taking her as a patient.

In June of 2015, the claimant underwent an initial evaluation at Pain Management Group. The claimant alleged that she had lower back pain that radiated into her lower extremities and was accompanied by numbness and tingling (Exhibit 20F/1). It was noted that there was moderate tenderness of her lumbar paraspinal muscles, that straight leg raise testing was positive on the right side, that she walked with an antalgic gait and that she displayed full 5/5 strength of her muscles (Exhibit 20F/3). The claimant was diagnosed with lumbar spondylosis, lumbar radiculopathy and lower back pain (Exhibit 20F/3). The claimant was provided with prescriptions for Roxicodone and Gabapentin and was instructed to return in 1-2 weeks for a steroid injection.

In July of 2015, the claimant presented to Memorial Hospital due to back pain. It was noted that her neck was soft and supple and that her extremities displayed full 5/5 strength and were without deformity (Exhibit 9F/l). She was discharged in stable condition after being administered an injection of Dilaudid and a dose of Decadron with a prescription for a Medrol dose pack for her lower back pain (Exhibit 9F/2).

In October of 2015, the claimant followed-up for her degenerative disc disease at the Pain Management Group. The claimant alleged that she had back pain that radiated into her lower extremities and was accompanied by numbness and tingling (Exhibit 20F/16). It was noted that she walked with an antalgic gait, that there was moderate tenderness of her lumbar spine, that straight leg raise testing was positive bilaterally and that she had full 5/5 strength of her lower extremities (Exhibit 20F/18). The claimant was diagnosed with lumbar spondylosis, lumbar radiculopathy and lower back pain (Exhibit 20F/18). She was provided with prescriptions for MS Contin, Roxicodone, Baclofen and Gabapentin and was recommended to return in order to undergo another round of steroid injections.

In May of 2016, the claimant presented to the Pain Management Group to follow-up for her degenerative disc disease. The claimant alleged that she had pain in her bilateral hips and lower extremities that was accompanied by numbness and tingling (Exhibit 20F/32). She reported that she used her cane for assistance 75% of the time. It was noted that she walked with a slightly antalgic gait, that straight leg raise testing was positive bilaterally, that she displayed full 5/5 strength of her lower extremities and that her lumbar spine was

> moderately tender to palpation (Exhibit 20F/34). She was provided with prescriptions for Roxycodone, Gabapentin and MS Contin for her hip, knee and lower back pain.
>
> In June of 2016, the claimant underwent an MRI of her lumbar spine at Unity Medical and Surgical Hospital. The study revealed mild bulging and mild loss of disc height at L3-L4 that caused minor effacement of the thecal sac with moderate right sided stenosis and stable postoperative changes at L4-L5 and L5-S1 (Exhibit 10F/4).
>
> In June of 2016, the claimant returned to i-Spine Institute due to back pain. The claimant alleged that she had periods of intractable pain throughout the day that would last for 45 minutes at a time (Exhibit 11F/1). It was noted that she was neurologically intact (Exhibit 11F/1). She was recommended to undergo a trial of a spinal cord stimulator.
>
> In September of 2016, the claimant returned to Physicians Healthcare due to pain in her right elbow. The claimant reported that she had pain upon movement of her right upper extremity (Exhibit 18F/29). It was noted that there was extreme tenderness upon movement of her right hand and that there was pain upon palpation of the right epicondyle (Exhibit 18F/29). She was administered a steroid injection to the right elbow and was instructed to wear an elbow brace for her epicondylitis.
>
> In November of 2016, the claimant underwent a nerve conduction study at Michiana Neurologic Medicine, PC. The study revealed right C6 or C7 radiculopathy and chronic left S1 radiculopathy (Exhibit 24F/3).

(PageID.78-81).

## II.      Medical Opinion Evidence

On October 4, 2016, Dr. Gottlieb completed a "spinal impairment questionnaire" regarding Plaintiff's ability to perform work-related activities. (PageID.545-50). The doctor reported that during an 8-hour workday, Plaintiff could sit and stand/walk for 2 hours each. (PageID.547). The doctor reported that Plaintiff needed to be able to elevate both of her legs when sitting. (PageID.548). Dr. Gottlieb reported that Plaintiff could occasionally lift/carry up to 5 pounds, but could never lift or carry more than 5 pounds. (PageID.548). The doctor also

reported that Plaintiff would need to take multiple unscheduled breaks during the workday each lasting 45-60 minutes. (PageID.549). The ALJ afforded "little weight" to Dr. Gottlieb's opinions. (PageID.83). Plaintiff argues that she is entitled to relief on the ground that the ALJ's rationale for discounting her treating physician's opinions is not supported by substantial evidence.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be

"supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ considers the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

In support of his decision to afford limited weight to Dr. Gottlieb's opinions, the ALJ stated:

> The undersigned gives these opinions little weight, as they are not supported by the record, which indicates that the claimant is neurologically intact, that she is able to walk with a somewhat antalgic gait, that she has full strength of her upper and lower extremities and that she has tenderness of her lumbar paraspinals. The objective evidence indicates that her lumbar fusion is stable and

>that she has minimal degeneration at the level above her hardware. She has been recommended to manage her symptoms through the use of conservative treatment, as she is not a candidate for further surgery.

(PageID.83).

While Plaintiff may have identified evidence supporting her preferred interpretation of the evidence, the Court nevertheless concludes that the ALJ's rationale is supported by substantial evidence. As Defendant correctly notes, numerous physical examinations revealed that Plaintiff was neurologically intact, able to ambulate independently, and possessed normal strength in her extremities. (PageID.324, 326, 380, 408, 411, 413, 450, 459, 468, 496, 500, 553, 557, 564, 572, 580, 584). The results of MRI examinations, performed in 2013, 2015, and 2016, revealed that Plaintiff's spine was "stable." (PageID.455, 457, 552). In sum, the ALJ articulated good reasons, supported by substantial evidence, for discounting Dr. Gottlieb's opinions.

Plaintiff takes issue with the ALJ's observation that she has been instructed to manage her symptoms with conservative measures because she is not a candidate for further surgery. Plaintiff argues that "the risk of further surgery would outweigh any potential benefits" and, furthermore, disputes the characterization of her treatment as "conservative." However, even if the Court assumes that the ALJ's statement is subject to challenge, such does not justify relief. The focus of the ALJ's analysis was the results of physical examinations and objective testing. Such constitutes substantial evidence to support the ALJ's analysis. Thus, Plaintiff's argument, at most, simply identifies a harmless error. *See Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (recognizing that the harmless error doctrine is intended to prevent reviewing courts from becoming "impregnable citadels of technicality"); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 535-36 (6th Cir. 2001) (recognizing that remand to correct an error committed by the

ALJ unnecessary where such error was harmless); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

**III.        The ALJ's RFC Assessment**

A claimant's RFC represents the "most [a claimant] can still do despite [her] limitations." *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). The ALJ concluded that Plaintiff can perform a limited range of sedentary work. Plaintiff does not argue that the ALJ should have articulated a more restrictive RFC, but instead argues that the ALJ's RFC fails because the ALJ failed to cite to any specific evidence in support thereof. The Court is not persuaded.

The ALJ is tasked with determining a claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c). While the ALJ may not "play doctor" and substitute his own opinion for that of a medical professional, the ALJ is not required to tailor his RFC assessment to any particular opinion or item of medical evidence. *See, e.g., Poe v. Commissioner of Social Security*, 342 Fed. Appx. 149, 157 (6th Cir., Aug. 18, 2009). Instead, the ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004). This is precisely what the ALJ in this matter did and the ALJ's RFC assessment is supported by substantial evidence. Accordingly, this argument is rejected.

**IV.        Plaintiff's Subjective Allegations**

At the administrative hearing, Plaintiff testified that she is limited to a greater extent than the ALJ recognized.  For example, Plaintiff testified that she is forced to lay down "at least a good seven hours" each day because of her back pain.  (PageID.111).  Plaintiff also reported that she experiences panic attacks during which she "can't breathe."  (PageID.113-14).  Plaintiff also reported that she is unable to perform any household chores.  (PageID.117-18).  The ALJ discounted Plaintiff's subjective allegations on the ground that such were inconsistent with the medical evidence.  Plaintiff argues that she is entitled to relief because the ALJ's decision in this regard is not supported by substantial evidence.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability."  *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same).  As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled."  20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009).  Instead, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard.

First, it must be determined whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms.  *See* Titles II and XVI: Evaluation of Symptoms in Disability Claims, Social Security Ruling 16-3p, 2016 WL 1119029 at *3-4 (S.S.A., Mar. 16, 2016).  Next, the intensity and persistence of the claimant's symptoms are evaluated to determine the extent to which such limit his ability to

perform work-related activities. *Id.* at *4-9.[2]

As the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). As the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

---

[2] Social Security Ruling 16-3p rescinded Social Security Ruling 96-7p. *Id.* at *1. However, the adoption of this new Social Security Ruling did not alter the analysis for evaluating a claimant's subjective statements. Instead, as the Social Security Administration stated, it was simply "eliminating the use of the term 'credibility' [so as to] clarify that that subjective symptom evaluation is not an examination of an individual's character." *Ibid.* As courts recognize, aside from this linguistic clarification, "[t]he analysis under SSR 16-3p otherwise is identical to that performed under SSR 96-7p." *Young v. Berryhill*, 2018 WL 1914732 at *6 (W.D. Ky., Apr. 23, 2018).

Nevertheless, the ALJ is not permitted to assess a claimant's subjective allegations based upon "an intangible or intuitive notion about an individual's credibility." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007). Instead, the ALJ's rationale for discrediting a claimant's testimony "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248. Accordingly, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Id.*

In support of his decision discounting Plaintiff's subjective allegations, the ALJ noted as follows:

> After considering the claimant's allegations and complaints, the undersigned finds that her allegations are not consistent with the objective evidence. Imaging studies indicate that the claimant's lumbar fusion has remained stable and that she has only some minimal to mild degeneration throughout the rest of her spine. She has been informed that she is not a candidate for further surgery. Notes from physical examinations indicate that the claimant has longitudinally been neurologically intact and that she has been able to walk unassisted with an antalgic gait in spite of tenderness to palpation of her lumbar paraspinals. She has longitudinally been noted to display full strength and sensation of her upper and lower extremities, which have been without deformity or swelling. This is inconsistent with the claimant's allegations that she needs to lie down during the day. As for the claimant's epicondylitis, the record indicates that she has been recommended to manage her symptoms through the use of an elbow brace and the occasional steroid injection. The record does not indicate that her epicondylitis limits her ability to handle, finger or feel objects. Even if the claimant required the use of a cane, the vocational expert testified that there would still be jobs in the national economy that the claimant could perform.

(PageID.81-82).

The ALJ's observations and conclusions are consistent with the evidence of record.

In sum, the ALJ's decision to discount Plaintiff's subjective allegations complies with the relevant legal standard and is supported by substantial evidence. Accordingly, this argument is rejected.

## CONCLUSION

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  November 27, 2018      /s/ Ellen S. Carmody
                              ELLEN S. CARMODY
                              United States Magistrate Judge